UMIC GOVERNMENT SECURITIES, INC., Plaintiff-Appellant,

v.

PIONEER MORTGAGE COMPANY, Defendant-Appellee.

No. 81–5456.

United States Court of Appeals, Sixth Circuit.

Argued March 16, 1983.

Decided May 16, 1983.

Rehearing Denied July 25, 1983.

David C. Wade (argued), Martin, Tate, Morrow & Marston, Shepherd D. Tate, Memphis, Tenn., for plaintiff-appellant.

W. Frank Crawford, Michael G. McLaren (argued), Thomason, Crawford & Hendrix, Memphis, Tenn., Irwin H. Liptz, Kivitz & Liptz, Washington, D.C., for defendant-appellee.

Before CONTIE and KRUPANSKY, Circuit Judges, and BALLANTINE, District Judge *.

BALLANTINE, District Judge.

In this diversity action, UMIC Government Securities, Inc. appeals a judgment of the District Court for the Western District of Tennessee which, after a bench trial, denied UMIC's claims for damages and granted judgment on the counterclaim of Pioneer Mortgage Company.

The transactions which gave rise to the suit by UMIC involve contracts for the purchase and sale of Government National Mortgage Association certificates (GNMAs). GNMAs are pools of federally guaranteed individual mortgages, usually in one million dollar lots. The GNMAs are bought and sold just as commodities are, with delivery to be made at a future date called the settlement date.

UMIC and Pioneer entered into a number of contracts for the purchase and sale of GNMAs. Under one of these contracts, on May 14, 1980, Pioneer was obligated to deliver 13 GNMAs to UMIC and UMIC was obligated to deliver 11 GNMAs to Pioneer. Prior to the May 14, 1980, settlement date, in March and April of 1980, Pioneer and UMIC entered into two other contracts which required Pioneer to deliver to UMIC on June 18, 1980, two million dollars more in GNMAs.

On May 14, 1980, UMIC and Pioneer settled all matters due on that date by delivery or "pairing off" of GNMAs. Since Pioneer was to deliver 13 GNMAs and UMIC was to deliver 11 GNMAs, only 2 GNMAs

were actually transferred. For those two, UMIC paid Pioneer two million dollars. The other GNMAs were paired off, but because of the differences in the contract prices for each of the GNMAs, UMIC owed Pioneer an additional $92,895.82 in trading profits on the twenty-two paired off contracts.

Because of the volatility of the market, UMIC was concerned about Pioneer's performance of the June contracts. UMIC determined not to pay the $92,895.82 to Pioneer unless UMIC received from Pioneer certain mortgage pool information in regard to the June contracts. It should be noted that when the contracts were originally negotiated, Pioneer refused to agree to the establishment of a "mark to market" margin account designed to guarantee its performance.

The testimony was in dispute on the issue of the withheld funds. UMIC representatives stated that they thought Pioneer had agreed to allow UMIC to hold the funds. UMIC sent a letter dated May 30, 1980, which memorialized its understanding that the funds would be held pending completion of the June 18, 1980, GNMA transactions. Pioneer personnel testified that no such agreement was reached and, further, that they considered the retention of the funds an anticipatory breach of any upcoming contracts. Pioneer communicated this to UMIC in two letters of May 28, 1980, and June 4, 1980, in which UMIC's financial viability was questioned. On June 5, 1980, UMIC wrote Pioneer to express its intention to perform the June 18, 1980, contracts and offered to tender a check for the withheld funds at Pioneer's direction. UMIC also offered assurances to Pioneer to affirm the fact that no anticipatory breach or repudiation had been made by UMIC.

UMIC received Pioneer's June 4 letter on June 5. The letter stated that Pioneer considered the retention by UMIC of the $92,895.82 to be an anticipatory breach of the June contract. Pioneer repudiated any existing agreement and took the position that

* The Honorable Thomas A. Ballantine, Jr., U.S. District Judge for the Western District of Kentucky, sitting by designation.

it was under no obligation to deliver any further securities to UMIC. On June 6, UMIC filed a suit seeking damages and injunctive relief in the nature of specific performance of the two June 18, 1980 contracts. The injunctive relief was denied. Pioneer answered and filed a counterclaim for the $92,895.82.

The trial court found that UMIC had unilaterally determined not to pay the money owing on the May 14 contracts and that Pioneer had never agreed to such a retention. The trial court found UMIC's actions to be an attempt to change the contracts to be settled on June 18, 1980, and that UMIC's conduct authorized suspension of performance by Pioneer as of May 30, 1980. The court concluded as a matter of law that UMIC's May 30, 1980, letter "constituted a total repudiation by UMIC of the contracts which had as their settlement dates June 18." Accordingly, the court entered a judgment in favor of Pioneer on its counterclaim in the amount of $92,895.82 plus prejudgment interest at 11¾% from May 14, 1980 until the date of entry, with interest thereafter at the statutory rate.

■ UMIC charges as error the trial court's determination that UMIC repudiated the June contracts by its letter of May 30 which the court found required a new condition to the performance of those contracts. The trial court found that Article II of the Uniform Commercial Code applied to this case as it is adopted into the Tennessee Code Annotated, specifically, Section 47–2–610 Tenn.Code Ann. While the U.C.C. Article II applies to goods, which the GNMAs are not, it may be applied by analogy as with investment securities. Section 47–2–105 Tenn.Code Ann. Comments to Official Text, Comment 1. The comments to Section 47–2–610 Tenn.Code Ann. addressing repudiation state that "... anticipatory repudiation centers upon an overt communication of intention or an action which renders performance impossible or demonstrates a clear determination not to continue with performance." Under the Tennes-

see common law of contracts, an unqualified refusal to perform the contract has been held to constitute an anticipatory repudiation.[1]

UMIC's May 30 letter reads, in pertinent part, as follows:

> Pursuant to recent telephone conversations with UMIC, this letter will confirm that UMIC is presently holding $92,895.82 of monies owed to Pioneer Mortgage Company regarding May GNMA transactions. UMIC will hold the money pending the completion of the June 18, 1980 GNMA transactions and the receipt of any open securities. Accordingly, UMIC has agreed to pay interest on such funds at the current lending rate, initially 11¾ per cent.

Pioneer successfully contended below that UMIC's intention to retain the $92,-895.82 pending completion of the June contracts, constituted an overt communication of an intention not to perform the June contracts as written. We simply cannot agree. UMIC's attempt to retain the funds until June was not a request for an additional term to be added to the June contracts, but rather an attempt to modify its obligation under the May contracts. UMIC in no way indicated that it would not perform the June contracts, only that it would not complete its performance of the May contracts until June 18.

*Pittsburgh-Des Moines Steel Co. v. Brookhaven Manor Water Co.,* 532 F.2d 572 (7th Cir.1976) and *Unique Systems, Inc. v. Zotos International, Inc.,* 622 F.2d 373 (8th Cir.1980), cited by Pioneer do not support its position. Those cases did not concern a series of contracts, but involved situations in which a party refused to perform unless the other party agreed to a modification of the contract. There was no such refusal in the present case.

It is undisputed in the record and as found by the trial court that each contract between UMIC and Pioneer was a separate contract. Pioneer argues that UMIC's action with regard to the retained funds

---

1. *Kentucky Home Mutual Life Insurance Company v. Rogers,* 196 Tenn. 641, 270 S.W.2d 188 (1954).

somehow merged the May and June contracts which UMIC then breached by holding the funds. No authority is cited for this proposition, nor have we been able to find any. This situation is analogous to that in *National Farmers Organization v. Coast Trading Co., Inc.,* 488 F.Supp. 944 (D.Or. 1977), in which the court examined a series of contracts for the purchase of grain. The trial court considered each contract separately in determining the issue of anticipatory repudiation based upon the buyer's failure to pay for grain shipped under other contracts. The *National Farmers* court found that the seller was not relieved of its duty to deliver.

■ UMIC's retention of the funds from the May contract did not manifest an intent not to perform the June contract. Additionally, UMIC's action did not render Pioneer insecure under Tenn.Code Ann. Section 47–2–609 which would have authorized Pioneer to demand adequate assurances. UMIC already had paid Pioneer two million dollars under the May contracts and stood ready to pay Pioneer the retained funds if Pioneer would not agree to the proposed retention arrangement. There was simply no basis for the proposition that Pioneer had reasonable grounds for insecurity in this set of circumstances.

The findings of the trial court relating to UMIC's anticipatory repudiation and Pioneer's insecurity were clearly erroneous. UMIC, at most, attempted to modify the terms of the May contracts. Since UMIC did not anticipatorily repudiate the June contracts, Pioneer was not justified in refusing to perform. Therefore UMIC is entitled to damages for Pioneer's repudiation of the June contracts.

■ There remains one issue raised by UMIC, that is, the trial court's award of prejudgment interest at the rate of 11¾%. The interest rate was determined by the trial court to have been agreed upon by the parties in the retention arrangement. However, the trial court had found that Pioneer never agreed to UMIC's retention of the funds. We agree with the trial court's decision that there was no agreement as to the retention of the funds be-

cause the modification of the May contract which would have provided for the retention was not established under Tennessee law. As stated in *Balderacchi v. Ruth,* 36 Tenn.App. 421, 256 S.W.2d 390, 391 (1952):

And a modification of an existing contract cannot arise from an ambiguous course of dealing between the parties from which diverse inferences might reasonably be drawn as to whether the contract remained in its original form or was changed. (Citation omitted.)

It is abundantly clear that no agreement was ever reached on UMIC's retention of the funds. Therefore, the trial court, while correct in stating that UMIC held the funds without Pioneer's consent, was incorrect in finding that Pioneer and UMIC agreed upon an 11¾% interest rate. Any prejudgment interest must be assessed at the statutory rate from May 14, 1980.

The judgment is affirmed as to the principal award on the counterclaim and reversed in part and remanded for reconsideration of the interest award on the counterclaim and for entry of a judgment for UMIC on its claim for damages.